Next case on our call this morning is agenda number 7, case number 107016, People of the State of Illinois, Appalachia, versus Craven F. Phipps, Appalachia. May it please the court, counsel. Let's wait for the train to go by. The defendant in this case killed another motorist while driving drunk. The defendant in this case killed another motorist while he was driving drunk and he was sentenced to 12 years under a negotiated plea agreement. Then on direct appeal, the appellate court reversed his conviction on the ground that his defense counsel was ineffective in not moving to dismiss the charge under the Speedy Trial Act. The appellate court's decision was wrong and it should be reversed for two reasons. First, the judgment should be reversed because the defendant affirmatively waived his ineffective assistance claim while he was represented by a new attorney at the post-judgment motion stage. The appellate court lacked the authority to ignore the defendant's waiver. Second, even apart from defendant's waiver, the appellate court was wrong in concluding that defense counsel provided ineffective assistance. Counsel's failure to seek a Speedy Trial dismissal could not possibly have been error because there was no Speedy Trial violation. Starting with the waiver argument. This is the rare case of an affirmative waiver. The defendant didn't simply neglect to raise an ineffective assistance claim in the trial court. He explicitly waived that claim while he was represented by a new counsel, Attorney Garza. The record shows that the defendant himself raised the possibility that his plea counsel, Attorney Ford Wilkins, may have provided ineffective assistance. And then the trial court, in compliance with the procedures that this court outlined in the Nitz and Krankel line of cases, appointed a new attorney, Attorney Garza, for the specific purpose of looking into the possibility that the original counsel had made a mistake. Then Attorney Garza consulted with the defendant specifically about the ineffective assistance claim. And after that consultation... How do you know that he talked with him specifically about the ineffective assistance claim? Well, we know from the record the court specifically said, I'm appointing Attorney Garza to look into ineffective assistance. And then Attorney Garza said, in the presence of defendant and in the presence of original defense counsel, I've talked to both the defendant about this ineffective assistance claim and I've talked to original counsel and defendant will not be raising an ineffective assistance claim. And defendant has never disputed Attorney Garza's representation. So through Attorney Garza, defendant affirmatively waived that claim, specifically telling the court he would not be pursuing the ineffective assistance claim. Based on these facts, which are not disputed, the trial court or the appellate court found that the trial court, quote, gave the defendant the opportunity to raise an ineffective assistance claim, but the defendant, quote, chose not to do so and instead specifically informed Attorney Garza, quote, that he did not wish to pursue that claim. By choosing not to pursue an ineffective assistance claim, while he was represented by a new attorney, the defendant affirmatively waived any claim based on his plea counsel's performance. The appellate court should not have ignored that waiver. It was an unauthorized use of supervisory authority that the intermediate appellate court does not have and it also defeats the very purpose of the procedure outlined in Nitz and Crankle, which is to appoint a new conflict-free attorney to allow the expeditious resolution of a potential ineffective assistance claim at the trial court level. So the defendant's valid waiver of his ineffective assistance claim is one reason for reversing the appellate court's judgment. Even aside from the waiver, the judgment should also be reversed because defense counsel did not perform deficiently by failing to seek a speedy trial dismissal. In fact, there was no speedy trial violation in this case for two separate reasons. The first reason there was no speedy trial dismissal is the defendant never made a speedy trial demand. Under the new version of the Speedy Trial Act, which has been in effect since 1999, a delay is considered agreed to by the defendant unless he objects to the delay by making a written or oral demand for trial. As this court explained in the Cordell case, under the amended version of the Speedy Trial Act, there is no speedy trial violation in a case where the defendant never demands a trial. That's what happened here. No speedy trial demand, so under the statute, all delay was agreed to, and thus no time on the speedy trial clock elapsed. Because no time had run, counsel could not possibly have been ineffective in failing to seek a speedy trial dismissal. So defendant's failure to make a speedy trial demand is another ground justifying reversal of the appellate court's judgment. The last reason justifying reversal is that the second charge was essentially the same as the first charge for speedy trial purposes. The second charge was the same in all respects except for the name that it attached to the offense conduct. The first charging instrument called the offense by its pre-2003 name, which was reckless homicide involving DUI. The second instrument called it by its post-2003 name, aggravated DUI. But the elements and the stated penalties for each charge were exactly the same. As this court explained in the Gancar's decision, all that the 2003 amendment did was to recharacterize the conduct that had been called reckless homicide involving DUI and rename it aggravated DUI. The amendment retained the sentencing structure of three to 14 years of imprisonment. Here, because all that the second charging instrument did was to recharacterize the same offense and call it by its new name and correct the citation error in the original indictment. Ms. Dobbs, do contract principles apply such as mutual mistake in this situation? Well, I don't think there was. The mistake here would be limited to the name of the offense. And the critical points would be the elements of the offense. Why would it be limited? Well, what matters for... Because ultimately there are differences in the substance, isn't that correct? I disagree. The offense that the defendant pleaded guilty to the first time and the offense he pleaded guilty to the second time were the same offense substantively, and the penalties were the same. This might be a different case if the defendant had made any argument that he was confused about the penalty or the elements or that he didn't have notice, but he's never made that argument. And it's the notice factor that determines whether or not a second charge is going to be a new and additional charge for speedy trial purposes. But there's never been a notice argument here, and there couldn't be. The first charging document specifically said the defendant was under the influence of alcohol while he committed the offense. And it specifically said it was a Class III felony subject to special sentencing, which is the 14-year maximum. And then when the defendant negotiated the plea agreement, he agreed to a 12-year cap, which would only make sense if he understood the maximum to be 14 years. And then when he entered the plea agreement, the court specifically admonished him that there was a 14-year maximum. So the defendant has never made any type of argument that he didn't have sufficient notice of the second charge. And on this record, he couldn't possibly make that argument. So the important thing about the difference in the indictment is does the defendant have notice. And so here, where there's no notice problem, the second charge was really just a correction of a formal error, and it doesn't make a difference for speedy trial purposes. It's not a new and additional charge under Woodrum. So because the second charge was essentially the same as the first, just under a different name, the defendant's valid plea to the original charge waived his speedy trial rights with respect to that charge, and with respect to the second charge, because it was really the same. So the identity between the two charges is another reason why there was no speedy trial violation, and why the appellate court's judgment should be reversed. Thank you very much. Good morning. May it please the Court, Counsel, I'm Chris White from the Office of the State Appellate Defender. I'm appearing on behalf of the defendant, Craven Phipps. We ask that you affirm the judgment of the appellate court and vacate Mr. Phipps' conviction for aggravated driving under the influence. I think it's important to remember here that this case arose out of State error. The State filed the wrong charge. The State thought it could get 12 years by charging the defendant with reckless homicide, and the State was wrong. The statute had been amended. Prior to filing the charge, the legislature had amended the reckless homicide statute to remove the enhancing provision, making it a Class II felony if the deaths were involved, but reckless homicide remained a valid charge at that point. The defendant entered a plea to that charge. The defendant was sentenced, or I'm sorry, was not sentenced on that charge, but he has, by the way, done the complete sentence for that charge and has served it. Did not the legislation also remove the element of the accident happening while under the influence? Was that not also moved to aggravated DUI? Yes, it was moved to aggravated DUI. It removed the penalty. Right, the special sentencing provision, which made it a Class II felony from a Class III felony if it were done with a death. Mr. White, had defense counsel pointed out that the defendant was subject only to a five-year term? The trial court most likely would have rejected the plea agreement, right, and the defendant would have remained subject to prosecution for the correct charge, right? Well, I don't know, and we don't know that. I think the State, part of the problem here is I think counsel was really ineffective in two different ways. One of those ways, as you say, I think is not pushing for a cap of five or, I believe in his case, 10 years, because I think he's extendable based upon priors, which would make it 10 years. The cap may very well have remained on the aggravated DUI charge as far as when they went into the negotiations, had the State at that point caught on that this was a different charge. I think that at that point counsel became ineffective, as well as for allowing the defendant later to vacate that valid plea to the reckless homicide, which was a valid plea to a valid charge, which had been brought by the State, and then pleaded a more serious aggravated DUI charge, which was a Class II at the time. Counsel, do you agree that there was something that appeared to be a waiver here? No, and the reason I – I have a follow-up. And it is that it's that very waiver that you view as ineffective assistance of counsel? Well, she had mentioned that the counsel for the State had mentioned that post-conviction counsel had been appointed for the defendant, but there's no indication that it dealt with this issue. It appears from the record that the defendant's complaint regarding speedy trial was the speedy trial concerns he had with the reckless homicide charge, and the delay that it took from the time he was charged until the time that he had been sentenced. And not so much on – in fact, not at all – on the subsequent driving under the influence charge, which was – there was really no delay at that point because he had been charged by the State with aggravated DUI, and at that point had been sentenced within a couple of days. So I don't think that was the defendant's concern. I think the defendant's concern was the delay between the filing of the reckless homicide charge and the sentencing at that point. And there's no indication from the record that this had been considered by anybody. And as a matter of fact, you know, sort of the State's hyperbolic language in the reply brief aside, there's no evidence whatsoever that defense counsel here acted in any way inappropriately other than ineffective. Counsel, Mr. White, was there any prejudice suffered by the defendant? Oh, I think so, because he was sentenced now to a greater charge – a greater class charge, and he's now doing a greater sentence for reckless homicide, which has a higher – a higher sentencing range than the earlier – I'm sorry, aggravated DUI – than the earlier reckless homicide than he had been charged with. So he's doing more years in prison than he otherwise would, and he's already done the maximum sentence on a reckless homicide. So it's not as if he's walking away free here. He's done the maximum on that. Mr. White, at what point did the defendant inform the court he didn't want to go forward with his ineffective assistance counsel claim? Was it before or after he moved to withdraw his plea? I believe it was before, but I'm not certain on that, because I don't believe it dealt with that later charge. So the focus wasn't so much on that, because I don't think anyone knew. In fact, not only did defense counsel not know, the state didn't know, the judge didn't know, the defendant didn't know. No one here knew or understood, as the appellate court said, what was going on. And in fact, the only player here not expected to know the intricacies of these developments was the defendant, who has been since prejudiced because of the change of the statute. And also with respect to the waiver, Justice Freeman's question, I think a waiver is a voluntary relinquishment of a known right. And as I said earlier, I don't think that there's anything indicating here that the defendant knew what the consequences of this change were, because I think everyone was operating under the misconception that this was some sort of scrivener's error that just changed the statutes, when in fact it's not. It actually changes substantively the two statutes. The state and the dissent down below at the appellate level seemed to make a great deal out of the Woodrum case, but I don't think that's really applicable here, because Woodrum dealt with, indeed, the very same charge. Woodrum was a child abduction charge, which had been filed against the defendant, and the indictment had left out the language for other than a lawful purpose. The language was contained within the statute, but it wasn't contained within the indictment. Is this charge really new and additional? I think it is, because I think not only are they different classes, they're different causation elements. Recklessness deals with, obviously, the reckless way in which one conducts oneself when driving, as opposed to the alcohol, where the causation or the death is the result of alcohol consumption. I think that makes these two different. Not only is it different classes, whereas, as was mentioned earlier, Gancars, I think, also answer these. The special sentencing made the first charge elevated to a class two as well, right? Right. The first one did. Reckless homicide made it a class two if a death had occurred, which was another element of that offense. But without that sentencing provision, the statute is still valid, and that's the statute to which the defendant pled. And I think, as Gancars pointed out with respect to aggravated or reckless homicide, it was not the same offense, the reckless homicide, and when it was amended for the purposes of allowing the defendant to elect. So I think, you know, here, the difference between reckless homicide and aggravated driving under the influence is simply more than a simple scrivener's error and, you know, changing the name of the title. And I think because it is a speedy trial violation, the defendant was in custody from the day of the incident. I think all the time then would go against the state during the period at which it had made these errors and charged him with a different offense. And as a result of that, we're asking that you affirm the judgment of the appellate court and vacate his conviction for aggravated DUI. Any questions? Thank you. There seems to be an implicit assumption in the defendant's argument  That's not true. The defendant has never offered any authority for that proposition. Defendants plead to uncharged offenses all the time as part of charge bargaining. So there's no need here to analyze the indictment in isolation and figure out what charge was at stake because we have two additional factors. We have the plea agreement that the defendant negotiated with his attorney with a 12-year cap, which only makes sense if he knew he was really subject to the 14-year sentence, which he actually was. And we also have the plea hearing where the defendant was admonished about the 14-year cap. So it's clear from looking at the indictment in conjunction with the plea agreement and the plea hearing that the defendant was pleading guilty to the offense, which was in essence killing someone while driving drunk. The only difference is the name here. And there still has been no explanation of why that should make a difference. Repleading the defendant to the second charge was not necessary. It was just a housekeeping matter. There was no increase in sentence with the change of charge? No. The first plea, the defendant was admonished correctly that the charge had a 14-year cap or a 14-year maximum sentence, and that was accurate. The only problem was that the offense was called by the wrong name. So the second plea wasn't really necessary. It was just a housekeeping matter to clear up the record to head off the kind of argument that defense counsel ended up making on appeal anyway. But under the first plea, the defendant would have been subject to the same sentence. Ms. Stutz, counsel responded to a question I had about prejudice. He said that, yes, he's doing a longer amount of time than he would have. I don't see why that's the case. The elements of the charges are the same, and the defendant was correctly admonished about the 14-year cap, and he negotiated a 14-year maximum, and he negotiated a 12-year cap. He was sentenced in accordance with that. The defendant would have to be making an argument that, you know, that the plea was somehow invalid because he was mistaken about the name of the offense. That's the only difference. Well, reckless homicide existed after the change in the name of the offense, right? There was still a reckless homicide. Right. And that has a lesser penitentiary sentence than the aggravated DUI. Isn't that correct? That's true. And if this was a case where a defendant had somehow been confused and thought that he was pleading to the current version of reckless homicide, which has different elements and has a lower statutory maximum, this would be a different case. But both parties and the court seemed to agree that it was the same substantive offense. It was just called by the wrong name. That's the only difference. So if there had been some kind of notice argument like that, that he didn't know what he was pleading to, it would be very hard to make after he participated in a plea hearing where he acknowledged the 14-year statutory maximum. I believe Justice Garmon asked a question about when the defendant first raised the possibility that his initial counsel might have been ineffective. It was after the second plea. And it was actually after the post-judgment motions had been filed. And there was a motion to withdraw the plea and to reconsider the sentence. It was just a boilerplate sort of motion saying I didn't understand the admonishments, nothing specific about defense counsel. So it was after the post-judgment motion stage. I believe defense counsel made the point that there's no waiver because there's no voluntary relinquishment of a known right because there's nothing on the record specifically showing that the party's considered a speedy trial claim. That's not the standard. The right at stake here is the Sixth Amendment right to the effective assistance of counsel. And it's clear from the record that the defendant did understand he had that right. He's the one who brought it up. The court said that he had that right, and the court specifically said he was appointing a new attorney to look into that possibility. The defendant doesn't need to be a record showing every potential theory that was investigated here. It's just like when a defendant pleads guilty. The guilty plea is valid even if the defendant didn't specifically know about maybe every defense that he might have raised. If it's made with the assistance of competent counsel, the waiver is valid. What defendant needs to do is attack the validity of the waiver. He could have argued that attorney Garza was ineffective in waiving the claim, but he hasn't made that argument, so the waiver stands. I believe defense counsel also made a point that everyone was under the misunderstanding that the reckless homicide offense had somehow been invalidated by this court's decision in Pamukkala. There are a couple of stray remarks in the record that are a little bit imprecise. But I think the fair reading of the record is that both parties and the court understood exactly what happened. The court put the Pamukkala decision on the record, and the court said that decision invalidated part of the reckless homicide statute. It's just implausible to think that a judge in both parties were aware of that decision and then didn't understand what had actually happened. I think the fair reading is that everyone understood exactly what had happened, realized the citation error, and then did the second plea just to tie up loose ends. Finally, the defendant did point out that the Woodrum case is different in that the charge was exactly the same in that case. And in this case, the name of the charge was different. But the rule motivating the Woodrum rule is a notice concern. An amended charge is relevant if the defendant is caught off guard and there's a danger of a trial by ambush on a new and more serious charge. There can't be that kind of argument here. One, because the second charge was not more serious. The defendant was admonished at the first plea that the maximum was 14 years, just as at the second plea, and the elements were not different. So there can be no notice argument, and that's what the Woodrum rule turns on. So the second charge was not new and additional. Unless the court has further questions, I'd ask the court to reverse the appellate court's judgment. Case number 107016 will be taken under advisement as agenda number 7.